Constance Berry NEWMAN, Director,
Office of Personnel Management,
Petitioner,

v.

Eugene J. CORRADO, and Washington
Area Metal Trades Council,
Respondents.

No. 89-3026.

United States Court of Appeals,
Federal Circuit.

March 7, 1990.

Suggestion for Rehearing In Banc
Declined May 25, 1990.

Robert A. Reutershan, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for petitioner. With him on the brief were John R. Bolton, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Steven E. Abow, Office of the General Counsel, Office of Personnel Management and David M. Gayle, Office of Chief Counsel, Goddard Space Flight Center, National Aeronautics and Space Admin., of counsel.

James H. Heller, Kator, Scott & Heller, Chartered, of Washington, D.C., argued for respondents. With him on the brief was Irving Kator.

Before NIES, NEWMAN and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

The Director of the Office of Personnel Management (OPM) has petitioned for review of (1) the arbitrator's determination that he was without authority to consider OPM's petition for reconsideration and (2) the arbitrator's underlying decision reversing the decision of the National Aeronautics and Space Administration (NASA) to remove Eugene J. Corrado from his position as an electrician. We vacate the arbitrator's refusal to consider OPM's petition for lack of authority and we remand for proceedings consistent with this opinion.

*Background*

Corrado was employed as an electrician by NASA at its Goddard Space Flight Center (GSFC) on June 11, 1985. (NASA and GSFC are hereinafter referred to as "agency.") On February 27, 1986, Corrado was arrested on charges of possessing cocaine with intent to distribute and distribution of hashish. On July 23, 1986, Corrado pled guilty to a felony charge of possession of cocaine with intent to distribute. He received a $5,000 fine, but no imprisonment.

In August 1986, Corrado informed the agency's Security Branch of his conviction.

The Security Branch immediately initiated an investigation, which was conducted by OPM. On December 17, 1986, the resulting investigative report was sent to the agency and, on February 17, 1987, the agency proposed Corrado's removal. The notice of proposed removal did not explain why the agency considered Corrado's felony conviction necessitated that disciplinary action be taken against him, i.e., how his removal would promote the efficiency of the service. On July 29, 1987, the deciding official at the agency issued her decision to remove Corrado.

In the ensuing arbitration following an unsuccessful grievance, the arbitrator ruled, *inter alia*, that the agency had denied Corrado "substantive and procedural due process" by failing to include in the notice of proposed removal an indication of the nexus between the alleged misconduct and the efficiency of the service. Accordingly, the arbitrator ordered the agency to reinstate Corrado with full back pay, seniority and benefits.

OPM petitioned the arbitrator to reconsider the award. On August 19, 1988, the arbitrator denied OPM's petition stating: "I am *functus officio* or without arbitral authority to consider or reconsider the merits of the case." OPM then filed a petition in this court for review of both the arbitrator's refusal to consider the merits of its reconsideration petition and his decision that the agency had violated Corrado's due process rights.

In its petition in this court, OPM raises two issues:

1. Whether an arbitrator may refuse to consider a request by OPM pursuant to 5 U.S.C. § 7703(d) to reconsider a decision rendered by the arbitrator pursuant to 5 U.S.C. § 7121(e)(1); and

2. Whether the arbitrator erred as a matter of law in concluding that there is

a requirement that, in a notice proposing the removal of a federal employee pursuant to 5 U.S.C. ch. 75, subch. II, the proposing official set forth the nature of the nexus between the misconduct with which the employee is charged and the taking of disciplinary action against the employee to promote the efficiency of the service.

Because we agree with OPM that the arbitrator's decision on the first of these issues will have a "substantial impact" on the administration of the civil service laws and regulations, we granted OPM's petition to review.[1] We now vacate the arbitrator's decision on that issue and remand the case for further consideration.

## OPINION

### A.

Section 7703(d) of Title 5 (1988) sets forth the procedures under which the Director of OPM may seek review in this court of a decision of the Merit Systems Protection Board (Board). The final sentence of section 7703(d) provides:

> If the Director did not intervene in a matter before the Board, the Director may not petition for review of a Board decision under this section unless the Director first petitions the Board for a reconsideration of its decision, and such petition is *denied*. [Emphasis added.]

Thus, before OPM may petition this court to review any decision of the Board, it must first seek reconsideration of that decision from the Board and have its petition "denied". *See* 5 U.S.C. § 7703(d).

These same procedures must be followed in the arbitration arena as provided by 5 U.S.C. § 7121(f):

> ... [S]ection 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same man-

---

**1.** The Civil Service Reform Act states in relevant part:

> The Director of the Office of Personnel Management may obtain review of any final order or decision of the Board by filing a petition for judicial review in the United States Court of Appeals for the Federal Circuit if the Director determines, in his discretion,

> that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a *substantial impact* on a civil service law, rule, or regulation, or policy directive. [Emphasis added.]

5 U.S.C. § 7703(d) (1988).

ner and under the same conditions as if the matter had been decided by the Board.

As indicated above, OPM sought the required reconsideration from the arbitrator and its petition was "denied," albeit on grounds of a lack of arbitral authority. The question before us is whether such a "denial" is sufficient or whether the requisite "denial" must be on the merits of OPM's petition.

Corrado asserts that a denial for any reason is sufficient, i.e., that the statute contemplates exactly what happened here: OPM presented its petition to the arbitrator; the arbitrator denied it, albeit on the grounds that he was without authority to reconsider the original decision; and OPM then petitioned for review in this court. OPM, on the other hand, contends that the plain words of the statute, as well as its legislative history and sound policy, require arbitral consideration of the merits of its petition before review in this court.

The starting point for analysis of a statutory provision is the language of the statute itself, clearly the best indicator of Congressional intent. *See, e.g., Ulmet v. United States,* 822 F.2d 1079, 1082 (Fed.Cir. 1987); *Bingham & Taylor Div., Va. Indus. v. United States,* 815 F.2d 1482, 1484 (Fed. Cir.1987). Unfortunately, section 7703(d) is unclear on what type of denial Congress intended. It is plausible that "denied" could mean either what happened here, i.e., a refusal to consider the petition at all, or a denial on the merits.

To resolve the ambiguity, resort to the legislative history is appropriate. *See id.* at 1485. Although there is no legislative history dealing with an arbitrator's review of an OPM petition for reconsideration, the Senate Report accompanying section 7703(d) indicates why Congress required OPM to seek reconsideration by the Board of its decision before seeking appellate review. The Report states that reconsideration "avoid[s] unnecessary appeals by the Director," and further provides the Board with "an opportunity to consider the concerns of OPM before suit [appeal] is brought." S.Rep. No. 95–985, 95th Cong.

2d Sess. 64, *reprinted in* 1978 U.S.Code Cong. & Admin. News 2723, 2786. Congress' view that the Board should have the opportunity to consider OPM's concerns and that unnecessary appeals be curtailed would not be accommodated if the Board is allowed to simply refuse to consider, or perfunctorily dismiss, OPM's request for reconsideration. *See Newman v. Lynch,* 897 F.2d 1144, 1146–47 (Fed.Cir.1990).

We should be reluctant to impose *a fortiori* the legal duties of the Board on the arbitration process. *See Gonce v. Veterans Admin.,* 872 F.2d 995, 998–99 (Fed.Cir. 1989) (noting the "federal policy favoring arbitration of labor disputes" and that "[c]ourts should be careful not to 'judicialize' the arbitration process."); *Devine v. Sutermeister,* 724 F.2d 1558, 1562 (Fed.Cir. 1983) (there is a "traditional labor policy of judicial deference to arbitrators' decisions,"); *Devine v. Nutt,* 718 F.2d 1048, 1053 (Fed.Cir.1983), *rev'd sub nom. on other grounds, Cornelius v. Nutt,* 472 U.S. 648, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985) (and a general "solicitude that the federal courts have generally accorded to arbitral awards over the years."). Section 7121(f), however, mandates that it be done in this case. *Devine v. Nutt,* 718 F.2d at 1050 n. 1.

Corrado argues that arbitration is a "bilateral process created by agreement," and that while arbitrators under section 7121(e) and (f) are subject to "external law," *id.* at 1055, the statute does not "suggest how they must respond to a third party intrusion at the end of the arbitration proceeding." Corrado contends that *functus officio* is the general rule in labor-management arbitrations, and is applicable in the federal sector unless specifically modified by statute or by agreement of the parties to the arbitration. He suggests, therefore, that OPM should instruct agencies to negotiate provisions for reconsideration on petition by OPM in their collective bargaining agreements or that OPM should seek an amendment to section 7121(f) prescribing how arbitrators should respond to OPM requests for reconsideration. Otherwise, the response of the arbitrator in this case,

according to Corrado, should be considered sufficient. Corrado's arguments, however, are not persuasive. Section 7121(f), making the appeal procedures of section 7703 applicable to arbitrator's awards, is "external law" which Corrado admits is binding on arbitrators acting under section 7121(e). Incorporation of section 7703(d) into the arbitration process also negates the assertion that OPM's intervention is a "third party intrusion." Rather, the statute contemplates that OPM has an important role to play in the arbitral process, as well as in Board proceedings.

Finally, Corrado's contention that the statutory scheme does not indicate what response is required by an arbitrator is equally true of the Board. The same statutory provision, section 7703(d), is applicable to both. The Senate Report referenced above certainly suggests that something more than the equivalent of a *functus officio* response was contemplated in Board proceedings. The petition for reconsideration by OPM, in the words of the Senate Report, provides "an opportunity to consider the concerns of OPM." *See* S.Rep.No. 95–985, *supra* at 2786. Accordingly, notwithstanding the judicial reluctance to upset arbitration awards and the individualistic nature of each such proceeding, we hold that an arbitrator should receive and consider the merits of OPM's reconsideration petition. *Cf. Newman v. Lynch*, 897 F.2d at 1146–47. A *functus officio* response seems clearly to be in conflict with Congress' intent, as evidenced by the legislative history of section 7703(d) and the applicability of that section to arbitration awards. We are convinced that Congress extended section 7703(d) into the arbitration arena so that OPM's views would be considered at the hearing level to "avoid unnecessary appeals by the Director" to this court. S.Rep. No. 95–985, *supra*, at 2786. In this connection, this court noted in *Devine v. Nutt* that:

> OPM's position on the issues raised in the appeal may differ from those of either party to the arbitration, and ... meaningful appellate review of the arbitrator's decision on the basis of the OPM objections is hardly possible unless the arbitrator knows of the OPM objections and has a chance to modify his decision to conform to them, or to state his reasons for not doing so.

718 F.2d at 1052 n. 8.

The decision in *Cornelius v. Nutt*, 472 U.S. 648, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985), supports our conclusion that an arbitrator must consider OPM's petition for reconsideration on the merits. There, the Supreme Court held that the statutory scheme requires interpreting "harmful error" the same way in Board and arbitration proceedings, stating that "Congress clearly intended that *an arbitrator would apply the same substantive rules as the Board does in reviewing an agency disciplinary decision.*" (Emphasis added.) *Id.* at 660, 105 S.Ct. at 2889. In addition, the Court added:

> The Conference Committee noted that, under the Senate provision, "when considering a grievance involving an adverse action otherwise appealable to the [Board] ... the arbitrator must follow the same rules governing burden of proof and standard of proof that govern adverse actions before the Board. (Citation omitted.) The Conference Committee 'adopted that Senate provision in order to promote consistency in the resolution of these issues, and to avoid forum shopping.[16]'"

*Id.* at 661, 105 S.Ct. at 2890. Appended footnote 16 is particularly relevant here:

> 16. In addition, Congress made arbitral decisions subject to judicial review "in the same manner and under the same conditions as if the matter had been decided by the Board," 5 U.S.C. § 7121(f), expressly *"to assure conformity between the decisions of arbitrators with those of the Merit Systems Protection Board."* (Emphasis added.)

That desire for conformity mandates that an arbitrator consider OPM's views, as must the Board. Otherwise, arbitral decisions made without the benefit of OPM's views might differ significantly from the Board's jurisprudence.

Although the arbitrator viewed himself as without authority to reconsider his earlier opinion, we hold that the doctrine of *functus officio* in this case is inconsistent with the mandates of external law. *See, e.g., Devine v. Levin,* 739 F.2d 1567, 1570 (1984); *Devine v. Sutermeister,* 724 F.2d at 1566. As we interpret the external law, 5 U.S.C. § 7703(d), in conjunction with 5 U.S.C. § 7121(f), requires an arbitrator to consider *on the merits* an OPM petition for reconsideration. *Cf. Newman v. Lynch,* 897 F.2d at 1146–47.

We have not made our decision in ignorance of *Devine v. White,* 697 F.2d 421, 430–33 (D.C.Cir.1983). There, the court, in a case originating before the formation of this court, refused to require or even to permit OPM to seek reconsideration of arbitral decisions as a predicate to its judicial review. But this court has consistently held to the contrary, *see, e.g., Devine v. Sutermeister,* 724 F.2d at 1562 n. 4; *Devine v. Levin,* 739 F.2d at 1569 n. 3, and we are bound by those decisions.

■ OPM also argues that the arbitrator is required to issue a "reasoned decision" or "reasoned analysis" on the issues raised in its petition. The law, however, does not extend that far. As already indicated, the statute makes no such requirement, and the government has cited nothing supporting this suggestion. Accordingly, due to judicial reluctance to interfere with the arbitral process, *Devine v. Sutermeister,* 724 F.2d at 1562, we conclude that it is sufficient for the purpose of implementing the goals for which reconsideration petitions must be filed that the arbitrator consider on its merits OPM's reconsideration peti-

tion. Any policy arguments OPM musters for its suggested requirement are irrelevant. This court cannot impose requirements not grounded in the statute solely because they may represent sound public policy.

### B.

OPM further seeks to have the second issue decided at this time. This we decline to do. Because we have ruled that Congress intended that an arbitrator consider OPM's views on the merits before any appellate review, it would be inconsistent to resolve the second issue now without giving the arbitrator a chance to reassess his views in light of OPM's petition.

### *Conclusion*

Accordingly, we vacate the arbitrator's determination that he was *functus officio* or without arbitral authority to consider OPM's petition and remand for further proceedings consistent with this opinion. We dismiss the petition for review of the arbitrator's June 21, 1988 decision without prejudice.

### COSTS

Each party to bear its own costs.

VACATED–IN–PART, DISMISSED–IN–PART, AND REMANDED.